KIRKLAND v. STATE.

Opinion delivered January 30, 1904.

72  171
83  180

72  171
79  148
80  599

1. LIQUOR—SUMMARY CONDEMNATION.—The act of February 13, 1899 (Acts 1899, p. 11), providing for the summary seizure and destruction of intoxicating liquor kept in a prohibited district to be sold contrary to law, and "that any person on whose premises or in whose custody any such liquor may be found under warrant of this act shall be entitled to his day in court before said property shall be destroyed," did not contemplate a trial by jury in a proceeding under the act. (Page 175.)

2. CONSTITUTIONAL LAW—JURY TRIAL.—The constitutional guaranties that "the right of trial by jury shall remain inviolate," and that no person shall "be deprived of life, liberty or property without due process of law," do not prevent the legislature from dispensing with a trial by jury in a summary proceeding, under Acts 1899, p. 11, to search for and destroy intoxicating liquors kept in a prohibited district to be sold contrary to law. (Page 177.)

3. PROCEEDING TO CONDEMN LIQUOR—NATURE.—A proceeding under Acts 1899, p. 11, to condemn and destroy liquor illegally kept in a prohibited district is a civil one, and a preponderance of the evidence is sufficient to sustain it. (Page 178.)

Appeal from Jackson Circuit Court.

FREDERICK D. FULKERSON, Judge.

Affirmed.

J. W. & J. M. Stayton, Stuckey & Stuckey, Gustave Jones and Jos. W. Phillips, for appellants.

The right conferred under the act of 1899 (p.12) to a day in court before the destruction of the property contemplates that a day shall be fixed for hearing the cause, of which defendant shall have notice, at which time he shall have the right to be heard by himself or counsel, and to make his defense. 58 Ala. 599; 43 Am. St. Rep. 525; 14 Utah, 293; 66 S. W. 345; 49 Me. 285; Black, Intox. Liq. 365, 366; 80 Mo. 91; 90 Me. 57; 40 Ia. 95; 47

Ia. 418; 49 Ia. 351. Criminal intent in such a case was a question for a jury. Wells, Law & Fact, 119; Bl. Intox. Liq. 365; 21 Am. & Eng. Enc. Law, 977; 1 Gray, 1; 49 Me. 285; 105 Mass. 595; 115 Mass. 142. A justice of the peace has jurisdiction of such causes. 71 Ia. 216; Black, Intox. Liq. § 365; 21 Am. & Eng. Enc. Law, 977. Further, on right to trial by jury: Const. 1874, art. 2, § 10; 6 Am. & Eng. Enc. Law (2d Ed.), 975; 17 Cal. 302; 9 Oh. Cir. Ct. Rep. 178; 153 N. Y. 188. The court should not charge the jury as to matters of fact. Const. 1874, art. 7, § 23; 37 Ark. 581; 37 Ark. 239; 49 Ark. 439; *Ib.* 148; 39 Ark. 491; *Ib.* 413; 37 Ark. 165; 35 Ark. 147. The charge is criminal in its nature, and must be proved beyond a reasonable doubt, and not by a mere preponderance of evidence. 21 Am. & Eng. Enc. Law, 978; Bl. Intox. Liq. 366; 80 Me. 57, 91; 49 Me. 285; 105 Mass. 595. The court erred in admitting evidence of sales of liquor by Simmons. 6 Am. & Eng. Enc. Law (2d Ed.), 867; 11 Am. & Eng. Enc. Law (2d Ed.), 514; 1 Gr. Ev. § 111; 3 *Id.* 392; 32 Ark. 220; 45 Ark. 132. It was error to refuse the first instruction prayed by appellants. Bl. Intox. Liq. § § 365, 366; 80 Me. 57; 80 Me. 91; 66 S. W. 345. The fourth instruction prayed by appellants should have been given. 66 S. W. 345; 1 Gray, 1; 49 Me. 285; 105 Mass. 595; 115 Mass. 142. The eighth instruction prayed by appellees should also have been given. 1 Gray, 1; 66 S. W. 345. The tenth instruction prayed by appellees should also have been given. 56 Ark. 244; 68 Ark. 336. The court erred in its instructions to the jury. Const. 1874, art. 8, § 23; *Ib.* art. 2, § 10; Rose's Const. 69; 6 Am. & Eng. Enc. Law (2d Ed.), 982; 80 Me. 57; 40 Ia. 95; 105 Mass. 595; Bl. Intox. Liq. 366.

*George W. Murphy, Attorney General, W. V. Tompkins, G. A. Hillhouse* and *S. D. Campbell, Prosecuting Attorney Third Circuit,* for appellee.

As to meaning of "day in court," as used in the act of 1899, see: 60 Wis. 92; 24 Ark. 175; Waples, Proc. in Rem. § 23. The act of 1899 is not objectionable as denying due process of law or the right of trial by jury. 17 Am. & Eng. Enc. Law (2d Ed.), 220; 128 U. S. 1; 122 U. S. 623; 123 U. S. 623; 54 Am. Rep. 19; 14 Am. St. 447; 72 Ia. 377; 12 Enc. Pl. & Pr. 239. The act is a statutory police measure, and provides for proceedings which

do not belong to any class triable by jury at common law. Bl. Intox. Liq. § 352; 43 Vt. 297. This is not a criminal case. 47 N. H. 369; 43 Vt. 297. For cases not triable by jury see: 26 Ark. 281; 32 Ark. 17; *Ib.* 553; 38 Ark. 482; 40 Ark. 290; 48 Ark. 426; 50 Ark. 256; Thomp. & Merr. Juries, § 10; 54 Am. Rep. 24. The court was properly the judge of the facts as well as the law. 193 Ill. 635, s. c. 86 Am. St. 345. The rule requiring proof beyond a reasonable doubt has no application. 11 Am. Rep. 204; 19 Am. Rep. 747; 20 Am. Rep. 668; *Ib.* 752; 48 Am. Rep. 675; 21 *Ib.* 223; 23 *Ib.* 239; 40 *Ib.* 5; 41 *Ib.* 77; 52 *Ib.* 554; Bl. Intox. Liq. § 352; Waples, Proc. in Rem, § § 24, 25; 47 N. H. 369. The court did not err in the admission of testimony. Sand. & H. Dig. § 4885; Bl. Intox. Liq. § 509; 79 Ia. 478. Statutes providing, in such cases as this, that certain facts shall make out a *prima facie* case are constitutional. 17 Am. & Eng. Enc. Law (2d Ed.), 225; 63 A. Dec. 511; 36 Am. Rep. 705; 37 Ark. 322.

BATTLE, J. A proceeding was instituted under an act entitled "An act to suppress the illegal sale of liquor and to destroy the same when found in prohibited districts," approved February 13, 1899, section 1 of which, so far as it is necessary to set it out in this opinion, is as follows: "It is hereby made and declared to be the duty of the chancellors, circuit judges, justices of the peace, mayors and police judges, on information given or on their own knowledge, or when they have reasonable grounds to believe that alcohol, spirituous, ardent, vinous, malt or fermented liquors, or any compound or preparation thereof commonly called tonics, bitters or medicated liquors of any kind, are kept in any prohibited district to be sold contrary to law, or have been shipped into any prohibited district to be sold contrary to law, that they issue a warrant, directed to some peace officer, directing in such warrant a search for such intoxicating liquors, specifying in such warrant the place to be searched, and directing such officer on finding any such liquors in any prohibited district to publicly destroy the same, together with the vessels, bottles, barrels, jugs or kegs containing such liquors; * * * *Provided,* that any persons on whose premises or in whose custody any such liquor may be found under warrant of this act shall be entitled to his day in court before said property shall be destroyed."

The proceeding was commenced as follows: "On the 22d of March, 1901, J. E. Wilmans made an affidavit, before the clerk of the Jackson circuit court, that certain liquors were then kept in a building, No. 500 East First street, in the city of Newport, to be sold contrary to law, and the building was then used and controlled by C. C. Kirkland and Ol Kirkland, and was in a prohibited district, and asked that the liquors be seized and destroyed according to law.

On the 23d of March, 1901, the prosecuting attorney filed an information, based upon this affidavit, and prayed for a warrant, commanding the seizure of the liquors, and for their condemnation.

A warrant for the seizure of the liquors, and a summons, commanding the Kirklands to appear and show cause why the same should not be publicly destroyed, were issued. The warrant was executed.

On the 12th of July, 1901, at the term of the Jackson circuit court next ensuing, C. C. and Ol Kirkland filed their answer, denying that the liquor was kept in the district to be illegally sold, and alleging that it was the property of the Kirkland Liquor Company, a firm composed of C. C. Kirkland, M. E. Kirkland and H. O. Snyder, and that D. O. Kirkland was their manager.

On the same day the Kirkland Liquor Company filed a claim for the liquor, in which they denied that it was kept in the prohibited district for illegal purposes, and alleged that they had been engaged in the retail liquor business in Newport during the year 1900, and, on failure to procure license, they transferred their business to Bald Knob, in White county, Arkansas, where they were licensed retail liquor dealers; that just before their removal the business portion of Bald Knob was destroyed by fire, and they were unable to procure a place to store their stock of liquor, but only such as was needed for immediate use, and they kept a part of it stored in the room formerly occupied by them as a saloon, and, having had the premises leased for a term of years, they used the room (No. 500) as a warehouse, until they could store it at Bald Knob.

On the 15th of July the state filed an amendment to its complaint, in which it alleged at the time of the seizure of the liquor in controversy, and prior and subsequent thereto, liquor was illegally sold in and on premises No. 504 East First street, and

said illegal business was conducted in the name of R. T. Simmons, as to the general public, under a license issued by the United States to J. O. Jameson & Co.; that premises No. 504 was a part of the same building in which was also No. 500, and was connected therewith, and that the whole of such premises was, at the time of the seizure, under the control of D. O. Kirkland, the manager of claimants; that the liquor in No. 500 was used in connection with the business in No. 504, and in collusion with Simmons, and with the knowledge, consent, connivance and procurement of Kirkland and claimants; and prayed as before.

Appellants and D. O. Kirkland answered, and denied all the allegations in the amendment.

A jury was impaneled to try the issues of fact in the case. The court and jury heard the evidence adduced by both parties. At the close of it the court ordered the jury to return a verdict in favor of the state, as follows: "We, the jury, find that the liquor seized under the said warrant, and in controversy in this case, were kept in a prohibited district to be sold contrary to law, and find for the plaintiff;" and they did so.

Thereupon the court rendered judgment in accordance therewith, and ordered the sheriff to publicly destroy the liquors; and the claimants appealed.

Appellants contend that issues in proceedings under the act of February 13, 1899, must be tried by a jury, and that the rule in criminal cases must be applied, and it must be proved beyond a reasonable doubt that the liquors are or were kept in or shipped into a prohibited district, to be sold contrary to law; and that by the action of the court they were deprived of both these rights. Were they entitled to a jury?

The act of February 13, 1899, in every respect, treats, and virtually and in effect declares, the keeping and shipping intoxicating liquors in and into a prohibited district, to be sold contrary to law, to be a public nuisance.

It does not provide that a regular action or suit shall be instituted for the enforcement of its object. No complaint or writing of any kind need be filed, according to its terms. The warrant may be issued upon knowledge or reasonable belief, and by the judges of many courts of different jurisdiction and procedure. The sittings of three of them, justices of the peace,

mayors and police judges, are frequent and at no stated times fixed by the statutes. One class of them, chancellors, are judges of courts of equity, in which issues of fact in proceedings to abate a nuisance, and in controversies of an equitable nature, can be tried by the chancellor without a jury, indicating thereby that juries are not required, for why should they not be required in one case, and made necessary in all others? Indeed, the act does not, unless it be inferentially, provide for a trial in any court. Without expressly vesting jurisdiction in any, it authorizes chancellors, circuit judges, justices of the peace, mayors and police judges to issue the warrant. In fact, the whole act indicates that the legislature intended that the nuisance should be speedily abated by summary process. Section three of the act strengthens this conclusion, and is as follows: "That if any suit shall be brought against any officer or his bondsmen, or any other person, to recover for any liquors, vessels, barrels, bottles, jugs or kegs destroyed under the provisions of this act, it shall be a complete defense to such suit for such officer, bondsman or other person to show to the satisfaction of the court or jury that such liquors so destroyed were being sold contrary to law, or were kept to be sold contrary to law, or had been shipped into any prohibited district to be sold contrary to law, or that any portion of the liquors so destroyed had been a part of any liquor so sold contrary to law, or kept to be sold contrary to law, and, upon such showing being made, such officer, bondsman or other person shall not be liable for the liquor, vessels, barrels, bottles, jugs or kegs so destroyed." Acts 1899, p. 12.

The proceedings prescribed by the act are, a warrant, directed to some peace officer, directing a search for the liquors, specifying the place to be searched, "and directing such officer on finding liquor kept for sale in any prohibited district to publicly destroy the same, together with the vessels, bottles, barrels, jugs or kegs containing such liquors; the seizure of the liquors; and return of the warrant." In addition to this, it further provides "that any person on whose premises or in whose custody any such liquor may be found under warrant of this act shall be entitled to his day in court before said property shall be destroyed." In *Ferguson v. Josey,* 70 Ark. 94, 98, the court, in construing this proviso, said: "This clearly means that the owner of such liquor

shall be entitled to a fair and legal trial, with all the usual incidents thereto, for the purpose of ascertaining and determining whether his property has been forfeited, before it shall be destroyed; that he, or his agent in legal custody, shall have notice of the charge of the guilty purpose upon which his property is declared to be unlawfully held, a time and opportunity to prepare his defense, an opportunity to meet the witnesses against him face to face, and the benefit of the legal presumption of innocence." The latter clause of the sentence quoted enumerates usual incidents of a fair and legal trial. A jury is not mentioned, and it is not necessary to constitute a fair and legal trial. In no case is a trial by jury expressly or impliedly required, or necessary to a full and complete enforcement of the act.

But appellants contend that a trial by jury is a right guarantied by the constitution, and that it was not within the power of the legislature to deprive them of it in this case. It is true that the constitution provides that "the right of trial by jury shall *remain* inviolate" (art. 2, § 7); and that no person shall "be deprived of life, liberty or property, without due process of law" (art. 2, § 8). But it is well settled that it is only to cases at common law in which the issues of fact were triable by jury, and perhaps such as are of similar or analogous nature, that the guaranty relied upon by the appellants extends. A jury trial is not necessary to constitute due process of law in every case. *Govan* v. *Jackson,* 32 Ark. 553; *Williams* v. *Citizens,* 40 Ark. 290.

Parties in the following cases and proceedings are not entitled to a trial by jury: Proceedings for contempt (*Neel* v. *State,* 9 Ark. 259); contested elections (*Govan* v. *Jackson,* 32 Ark. 553); actions for the possession of an office under the code (*Wheat.* v. *Smith,* 50 Ark. 266); exceptions to an account of a guardian in probate court (*Crow* v. *Reed,* 38 Ark. 482); proceedings to disbar an attorney (*Ex parte* Wall, 107 U. S. 265); proceedings to condemn land for right of way for railroads under the constitution of 1836, which did not provide for trial by jury in such cases (*Cairo & Fulton Railroad Co.* v. *Trout,* 32 Ark. 17); suits in equity to abate a public nuisance (*Mugler* v. *Kansas,* 123 U. S. 623; *Eilenbecker* v. *District,* 134 U. S. 31; *Littleton* v. *Fritz,* 65 Iowa, 488); other suits of an equitable nature (*Hinkle* v. *Hinkle,* 55 Ark. 583); and other cases.

Vagrants and drunkards "may be lawfully detained and deprived of liberty without a jury. Such has been a lawful procedure in cases time out of mind under the common law." Brannon on the Fourteenth Amendment, p. 309. Taxes can be imposed, and property may be seized and sold for the purpose of collecting it, without suit, action or jury trial. Cooley on Constitutional Limitations, 6th Ed. p. 587. "A municipal corporation may summarily, without suit or warrant, in some cases, if not all, remove a public nuisance, without jury trial or legal proceeding other than the order of its council." *Gaines* v. *Waters,* 64 Ark. 609; *Waters* v. *Townsend,* 65 Ark. 613.

Jury trials are not necessary in summary proceedings, unless the statute requires it. 4 Bl. Com. 280; 24 Am. & Eng. Enc. Law (1st Ed.), 498; *Chambers* v. *Stringer,* 62 Ala. 596; *Francis* v. *Weaver,* 76 Md. 457. In *Govan* v. *Jackson,* 32 Ark. 553, it was held that "it is competent for the legislature to dispense with a jury in the case of a contested election; and a provision for the trial of such cases in a summary way has that effect."

We therefore conclude that it was within the power of the legislature to dispense with a jury trial in the summary abatements of public nuisances, and it has done so in this case.

Appellants contend that the proceedings prescribed by the act of February 13, 1899, are of a criminal nature, and that the allegation that the liquors in controversy were kept in a prohibited district to be sold contrary to law must be proved beyond a reasonable doubt. Are they criminal proceedings?

A similar question was discussed and decided in *State* v. *Barrels of Liquor,* 47 N. H. 374. In that case the court said: "This is a proceeding *in rem,* for the condemnation of the liquor and vessels; no penalty or fine is to be imposed upon the person who keeps the liquor with intent to sell, under this proceeding. All that is done, or that can be done, under this complaint, is to settle the question whether the liquor, vessels, etc., shall be condemned as forfeited to the county, or shall be delivered to the claimants, or restored to the place from whence they were taken. It is a proceeding that cannot be commenced by indictment, and the complaint which is made in the first instance is in the nature of a libel, * * * and not in the nature

of a criminal complaint against any person, but is simply a pro-
ceeding *in rem* against the liquor, etc., for their condemnation as
forfeited property. * * * This class of cases are [is] to be con-
sidered and tried as civil cases are tried. The question involved
is only as to the title to property, like other questions in civil
causes. It is only when some crime or misdemeanor is charged
upon an individual that all reasonable doubt of the guilt of the
accused must be removed. But here no one is accused of any
crime ; in fact, it is not a proceeding against any person. * * *.
All issues will be decided upon the preponderance of evidence."

Chief Justice Marshall, in "a trial of an information to declare
the forfeiture of a ship for having exported arms and ammunition
in contravention of law," said: "We are unanimously of the
opinion that it is a civil cause. It is a process in the nature of a
libel *in rem;* it does not, in any degree, touch the person of the
offender." *United States* v. *La Vengeance,* 3 Dal. 297.

In a case declaring the forfeiture of gunpowder for having
been kept in violation of law, Chief Justice Shaw, speaking for
the court, said: "The court are of opinion that a libel, sued as a
process *in rem* for a forfeiture, is in the nature of a civil action,
and that either party may file exceptions in matter of law." *Barna-
coat* v. *Six Quarter Casks of Gunpowder,* 1 Metc. 230.

Mr. Justice Story said: "It is not true that informations
*in rem* are criminal proceedings. On the contrary, it has been
solemnly adjudged that they are civil proceedings." *Anonymous
Case,* 1 Gall. 23, Fed. Cas. No. 444.

Mr. Waples, in his work on "Proceedings in Rem," says,
"Admiralty causes against vessels or goods for forfeiture, revenue
cases, and all species of proceedings *in rem* against things guilty,
hostile or indebted, are well settled to be civil, and not, in any
sense, criminal actions." Sec. 25, and cases cited.

So we think that the proceeding prescribed by the act of
February 13, 1899, is civil, and that a preponderance of the evi-
dence is sufficient to sustain it.

The evidence in this case is sufficient to sustain the finding of
the court and the verdict of the jury.

Judgment affirmed.